IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERIC L. MYRIECKES, #11013-068 | * | |
| Petitioner | * | |
| v. | * | CIVIL ACTION NO. L-11-917 |
| J. CARAWAY, *Warden* | * | |
| Respondent | * | |
| | *** | |

**MEMORANDUM**

Eric L. Myrieckes is a U.S. Bureau of Prisons ("BOP") inmate currently confined at the Federal Correctional Institution at Cumberland, Maryland ("FCI-Cumberland"). On April 7, 2011, he filed this 28 U.S.C. § 2241 Petition for habeas corpus relief, seeking to expunge an adjustment, to have a rule violation reduced, and to have his forfeited good conduct time ("GCT") restored. See Docket Nos. 1, 5 and 6. Myrieckes claims that the evidence entered at an October 1, 2010 adjustment proceeding does not support a guilty finding for possession of a "hazardous tool" (a cell phone) because the phone was located in a common area and because, at the time he was found guilty of the violation, a cell phone was classified not as a "hazardous tool" but rather as "contraband" carrying a lesser punishment. Myrieckes further asserts that he was denied a representative and witnesses at his hearing. Finally, Myrieckes claims that he was denied equal protection, that he was retaliated against, and that the BOP guidelines regarding contraband are void for vagueness.

The issues have been fully briefed, and the Court finds oral hearing unnecessary. See Local Rule 105.6 (D. Md. 2011). For the reasons stated herein, the Petition will be denied and dismissed.

**I.  BACKGROUND**

The BOP has the authority to provide for the protection, instruction, and discipline of all persons convicted of offenses against the United States.  See 18 U.S.C. § 4042(a)(3).  The rules concerning inmate discipline, found in 28 C.F.R. §§ 541.1 et seq, provide for an exhaustive process.  If staff believe that an inmate has violated a BOP regulation, an incident report is prepared and the inmate is provided with a written copy of the charges.  Ordinarily, this occurs within 24 hours of the time BOP staff become aware of the incident.  See 28 C.F.R. § 541.5(a).

An investigating officer then advises the inmate of the charges against him, requests a statement from the inmate, and advises him of his rights.  After the investigation is completed, the matter may be informally resolved or forwarded to the Unit Disciplinary Committee ("UDC") for initial review and may conduct a hearing.  This review is ordinarily conducted within five working days.  See 28 C.F.R. §§ 541.5(b) and 541.7.  The inmate is entitled to be present at the hearing, except during the deliberations of the decisionmakers or when institutional security would be jeopardized by the inmate's presence.  The inmate may also make a statement and present documentary evidence on his own behalf.  See 28 C.F.R. §§ 541.7(d) and (e).

After considering all of the evidence presented at the hearing, the UDC makes a decision based on the facts and, if there is conflicting evidence, based on the greater weight of the evidence.  See 28 C.F.R. § 541.7(e).  If the UDC finds that the inmate committed the prohibited (or similar) act and that the violation is serious and warrants consideration for non-minor sanctions, the UDC refers the charges, without indication of findings as to the commission of the alleged violation, to a Disciplinary Hearing Officer ("DHO") for further proceedings.  See 28 C.F.R. §§ 541.7(a) and (g).

When appearing before the DHO, the inmate is entitled to: (1) request the assistance of a staff representative, (2) make a statement and present evidence, and (3) submit the names of requested witnesses and have them called to testify. See 28 C.F.R. §§ 541.8(d)–(f).

The DHO makes a determination as to whether or not the inmate committed the charged act (or similar) act and prepares a record of the proceedings. See 28 C.F.R. §§ 548(h). This record documents the inmate's appraisal of his rights, the findings and decision of the DHO, and the specific evidence relied on by the DHO. It also includes a brief statement of the reasons for any sanctions. Id. A written copy of the DHO's decision and disposition must be provided to the inmate. Id.

As relevant to this case, BOP prohibits inmates from possessing "hazardous tools." Regulations in place at the time of the incident with which Myrieckes was charged defined hazardous tools as "[t]ools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade." See 28 C.F.R. § 541.13, Table 3 (2010) (repealed). Possession of a hazardous tool is referred to as a "Code 108" infraction. Id. Code 100-level offenses are the most severe. Federal regulations required the DHO to impose on an inmate convicted of a Code 100-level infraction one or more of the following sanctions: (a) recommendation of parole date rescission, (b) forfeiture of earned statutory GCT or non-vested GCT (up to 100%), (c) recommendation of disciplinary transfer, (d) disciplinary segregation of up to 60 days, and (e) monetary restitution. Id. at Tables 4 and 6.

Because of an increase in cell phone possession among inmates, and because of the serious security concerns posed by phones (e.g., use in planning escapes or in causing harm to

3

witnesses on the outside), the Warden at FCI-Fort Dix, Petitioner's place of confinement at the time of the incident, issued a memorandum on October 4, 2006 to the entire prison population. The memorandum stated that possession of a cell phone would be construed as a Code 108 violation. Resp.'s MTD Ex. 1 at 1, Docket No. 8-2. It specified that "inmates found in possession of electronic communication devices . . . such as a cell phone . . . may be charged with a violation of Code 108, Possession, Manufacture, or Introduction of a Hazardous Tool." Id. The memorandum further reminded each inmate of a "responsibility to keep his or her area free of contraband." Id. (citing BOP Program Statement 5270.07). The Warden issued a nearly identical memorandum on December 28, 2009. Id. at 2. After initial publication, the memoranda were kept in the inmate library and posted throughout the institution.

From April 6, 2010 to October 19, 2010, Myrieckes was designated to FCI-Fort Dix. He was assigned to Room 213 with 12 other inmates. Resp.'s MTD Ex. 2 and 3. On or about July 17, 2010, just after midnight, BOP staff searched Room 213 and found a contraband cell phone. They then conducted an investigation to ascertain who owned and/or used the phone. See Decls. of Aldo Martusciello and John Miosi, Docket Nos. 8-7 and 8-8.

BOP staff first attempted to resolve the matter informally by speaking individually to each of the inmates assigned to Room 213. After efforts at informal resolution were exhausted, an incident report was prepared on July 22, 2010, charging Myrieckes with a Code 108 violation for possession of the cell phone. See Resp.'s MTD Ex. 2-C at 1. The report stated that Myrieckes had admitted to the investigating officer that the phone belonged to him and that he had used it earlier that day.[1] Id. at 3. The report was delivered to Myrieckes within hours of

---

[1] Myrieckes denies that he ever admitted ownership of the cell phone.

4

preparation and, pursuant to regulations, he was informed of his rights. Myrieckes modified his statement, denying ownership of the cell phone but admitting that he had "used it a couple of times." Id. at 1, 3, 6.

On July 26, 2010, Myrieckes was informed that the DHO would hold a hearing. He requested that BOP Officer Martusciello, who had prepared the incident report, be called as a witness. At the beginning of the hearing, Myrieckes waived the right to have a BOP staff representative for the hearing. After Myrieckes was read his rights, he stated, "The phone was in the room and I seen the phone. I saw the girlie pictures. It was not mine. I am not disputing what is in the incident report there were other things considered. [*sic*]" Id. at 1. Myrieckes refused to sign the form indicating he had waived his right to staff representation and was escorted back to his cell.

After taking in the evidence and conducting a hearing, the DHO held there was sufficient evidence to support the finding that Myrieckes had committed the Code 108 offense as charged. Specifically, the DHO observed that: (1) during the initial investigation conducted on July 17, 2010, Myrieckes admitted that the cell phone belonged to him and that he had used it earlier that day, (2) Myrieckes later admitted to Martusciello that he had used the phone but denied ownership, (3) Myrieckes stated to the UDC that he had used the phone a couple of times, and (4) Myrieckes stated before the DHO that "[t]he phone was in the room and I seen the phone." Id. at 3. The DHO concluded, "The fact that you stated that you used the cell phone whether or not it was yours is a violation of the prohibited act. [*sic*]" Id. Myrieckes was sanctioned with fifteen days of disciplinary segregation, loss of 40 days of GCT, forfeiture of 60 days of non-vested GCT, and temporary loss of commissary, phone, and visitation privileges. Id.

5

Myriekes filed an administrative challenge to the DHO's decision, alleging that he was denied his requested witness, that he was sanctioned without a hearing, and that he was not provided with a copy of the incident report within 24 hours. See Resp.'s MTD Ex. 6, Docket No, 8-9. The BOP Regional Director denied the appeal, finding no evidence to support Myrieckes's allegations. See id.

Myrieckes then appealed this decision to the BOP office of General Counsel, arguing that because the code violation with which he was charged had not been published in the Federal Register, he should have been charged with a different code violation or not charged at all. He also asserted that the incident report had been fabricated. See Resp.'s MTD Ex. 7, Docket No, 8-10. The BOP's Administrator of National Inmate Appeals likewise denied Myrieckes's request for relief, finding that all inmates had been afforded advance notice that possession of a cell phone would be considered a code 108 violation, that there had been no irregularities in the proceedings before the DHO, and that there was no evidence to support Myrieckes's allegations that the incident report had been falsified. Id. Approximately two weeks later, Myrieckes filed the petition for habeas relief now before the Court.

**II. STANDARD OF REVIEW**

Although prisoners do not forfeit their rights under the Due Process Clause, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full array of rights due a defendant in such proceedings does not apply." See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings in which an inmate faces the possible loss of GCT, he is entitled to certain due

process protections. These include: (1) advance written notice of the charges against him, (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action, (3) a hearing in which he is afforded the right to call witnesses and present evidence, when doing so is not inconsistent with institutional safety and correctional concerns, (4) the opportunity to have non-attorney representation if the inmate is illiterate or the disciplinary hearing involves complex issues, (5) an impartial decision-maker, and (6) a written decision. Id. at 564–71. There is no constitutional right to confront and cross-examine witnesses or to retain or be appointed counsel during prison disciplinary proceedings. See Baxter v. Palmigiano, 425 U.S. 308, 322–23 (1976); Brown v. Braxton, 373 F.3d 501, 505–06 (4th Cir. 2004). The hearing officer's decision must contain a written statement of the evidence relied upon. See Baxter, 425 U.S. at 323 n.5 (citing Wolff, 418 U.S. at 564).

Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Superintendent, Mass. Correctional Institute v. Hill, 472 U.S. 445, 456 (1985); see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990).

### III. ANALYSIS

The Court finds that the disciplinary process associated with Myrieckes's institutional charge meets the aforementioned minimum due process requirements. He received advanced written notice of the charges, was advised of his rights, and received formal notice of the DHO hearing.

At the hearing, Myrieckes was given the opportunity to call witnesses. He identified only Officer Martusciello, whose statement was already before the DHO in the form of of the incident report.[2] Myrieckes was given the opportunity to have a staff representative present, but waived such representation. His testimony did not exonerate him from the Code 108 charge. Rather, he implicated himself before the DHO by admitting that he had seen and used the phone in his housing area. The DHO submitted a written statement identifying the evidence on which he relied in determining that Myrieckes violated Code 108 and explaining the reasons for the sanctions that he imposed

The Court further finds no evidence of bias or prejudice on the part of the DHO in conducting the hearing and reaching his conclusions. Prisoners' claims of bias and retaliation are to be viewed with skepticism. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Myrieckes makes no specific allegations that the DHO was biased against him, nor does the record suggest that the proceedings against him were tainted.[3] To the contrary, setting aside all other statements made by Myrieckes during the investigation of the incident, he admitted to the DHO that he had used the phone in the common area "a couple of times" and thus was in constructive possession of it. Such an admission was sufficient, without more, to find him guilty of the rule violation.[4]

---

[2] The DHO need not permit the calling of witnesses who will simply present repetitive evidence. As such, the officer who wrote the incident report need not be present at the hearing nor subject to cross-examination. See 28 C.F.R. § 541.8(f)(2). "There is no constitutional right to confront and cross-examine witnesses" during a prison disciplinary hearing. Orozco-Franco, Civil No. PJM-10-1709, 2011 WL 806516 at *3 (D. Md. 2011) (citing Brown v. Braxton, 373 F.3d 501, 505–06 (4th Cir. 2004)).

[3] Petitioner maintains that the DHO consulted with the investigating officer prior to the hearing.

[4] The simple fact that the phone was found in the common area is sufficient to support a finding of constructive possession. See Flannagan v. Tamez, 368 F. App'x 586, 588 (5th Cir. 2010) (affirming DHO

As to Myrieckes's contention that he did not receive notice within 24 hours of the infraction, federal regulations in force at the time of the offense did not impose such a time limit. Rather, they stated that BOP personnel were to prepare an incident report when they had reason to believe a particular inmate committed a violation and when attempts at informal resolution had proven unsuccessful. See 28 C.F.R. § 541.14(a) (2010) (repealed).

As stated above, the cell phone was found on July 17, 2010. BOP staff took time to conduct an investigation into who used the phone and to attempt informal resolution. An incident report was prepared on July 22nd, and Myrieckes was provided with a copy that same day. That this did not occur until five days after the discovery of the cell phone is of no constitutional moment.[5] The evidence demonstrates that Myrieckes received written notice of the infraction well before the DHO hearing, which is all that is required under Wolff.

Myrieckes's claim that he did not receive notice that he would be charged for a Code 108 offense, rather than a lesser offense, is also unsupported by the record evidence. Inmates at FCI-Ft. Dix were advised that possession of a contraband cell phone would constitute a Code 108 violation. Additionally, the incident report provided to Myrieckes on July 22, 2010 expressly

---

disciplinary action where inmate was held to be in constructive possession of cell phone that was found in common area shared with four other inmates); Robinson v. Warden, 250 F. App'x 462, 464 (3rd Cir. 2007) (cell phone found in prisoner's wall locker constituted "some evidence" of possession even though prison officials did not prove that the prisoner owned the cell phone).

[5]   Even if serving Myrieckes with the notice of rule infraction more than 24 hours after discovery of the infraction violated BOP rules and policy, such a violation does not rise to the level of a due process violation. See Jackson v. Cain, 864 F.2d 1235, 1251 (5th Cir. 1989) (failure to follow procedural regulations "does not establish a violation of due process, because constitutional minima may nevertheless have been met") (internal quotation and citation omitted). Further, the true measure of whether a due process violation has occurred is whether the inmate suffered harm or some form of prejudice as a result. See Von Hahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Nowhere in his Complaint does Myrieckes argue that he was harmed, prejudiced or otherwise disadvantaged by any alleged delay in receipt of the notice of rule infraction.

stated that Myrieckes was charged with a Code 108 offense. Resp.'s MTD Ex. 2-C, Docket No. 8-5.

Finally, an inmate is afforded substantive due process so long as the disciplinary hearing decision was based upon "some evidence." Hill, 472 U.S. 445, 455 (1985). As stated above, federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The proceedings before this Court are not a retrial of the disciplinary hearing. It is sufficient that the record contains evidence supporting the DHO's decision. The DHO's report states that, in sustaining the Code 108 charge, he relied on the investigating officer's report, as well as statements made by Myrieckes during the investigation and at the hearing. These facts are sufficient grounds for a prison disciplinary conviction. "Some evidence" was all that was required for the DHO to find Myrieckes guilty of possession of a hazardous tool.

Next, Myrieckes claims he was denied equal protection and retaliated against. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). To show that his equal protection rights were violated, Myrieckes must demonstrate that he was treated differently than similarly situated inmates, that the discrimination was intentional or purposeful, and that the disparity cannot be justified by any valid prison or security interest. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Viewing the facts in the light most favorable to Myrieckes, he nevertheless sets forth no cognizable facts from which the Court could find that he was treated differently than other, similarly situated inmates. Myrieckes alleges in only the most conclusory manner that his equal

protection rights were violated.

Myrieckes's retaliation claim fails for the same reason. To succeed on a claim of retaliation, a petitioner "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Pierce v. King, 918 F. Supp. 932, 945 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state a claim).

Finally, Myrieckes claims the sanctions imposed against him should be lifted because the regulation itself is unconstitutionally vague. In support of his claim, Myrieckes points to the fact that federal regulations were amended after his offense, effective June 20, 2011, to provide expressly that possession of a cell phone constitutes a Code 108 violation.

A statute is impermissibly vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." United States v. Whorley, 550 F.3d 326, 333 (4th Cir. 2008). To pass constitutional muster, statutory prohibitions must simply "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." Id. A statute need not spell out every possible factual scenario with "celestial precision" to avoid being struck down on vagueness grounds. Id.

It is not constitutionally necessary for the BOP to include every kind of implement that might fall into the category of "hazardous tool." Rather, it is sufficient that a person of ordinary

11

intelligence would understand that a cell phone could be used in such a manner. In the instant case, it is clear that a person of ordinary intelligence would understand a cell phone could be used as a hazardous tool as defined by BOP regulations. Cell phones can be used to facilitate an escape or coordinate harm to others. Furthermore, whether the regulation was clear in the abstract is irrelevant, because Myrieckes was given actual notice that possession of a cell phone would constitute a Code 108 violation, in the form of the Warden's multiple memoranda on the subject.

Numerous courts have rejected the precise argument advanced by Myrieckes for the reasons stated above. See Patel v. Zenk, No. 10–4474, 2011 WL 2421092 at *2 (3rd Cir. June 17, 2011) ("We are not persuaded that Code 108 is unconstitutionally vague" in the context of inmate cell phone possession); Robinson v. Warden, 250 F. App'x 462, 464 (3rd Cir. 2007) (same); Franco v. Adler, No. 1:09–cv–00325, 2011 WL 826256 at *5 (E.D. Cal. Mar. 2, 2011); Vasquez v.Shartle, No. 4:10 CV 2511, 2011 WL 1004934 at *5 (N.D. Ohio Mar. 18, 2011) (holding that "the categorization of a cell phone as a hazardous tool was fairly applied to conduct that Petitioner knew violated prison rules, and was not unconstitutionally vague").

That the BOP, through rule amendment, later explicitly included possession of a cell phone as a Code 108 violation does nothing to support Myrieckes's claim. Contrary to Myrieckes's assertion, the later explicit inclusion of cell phones in Code 108's list of "hazardous tools" does not support the position that the rules, as existed at the time of Myrieckes's offense, failed to encompass cell phones as a hazardous tool.

## IV. CONCLUSION

For the aforementioned reasons, the Court concludes that Myrieckes's disciplinary hearing process comports with due process and that his constitutional rights were not otherwise violated. The DHO's decision will stand, and <u>habeas</u> relief will be denied. Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. <u>See</u> 28 U.S.C. § 2253(c)(2). A separate Order follows.

Dated this 16th day of February, 2012

/s/
_____
Benson Everett Legg
United States District Judge